## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

THORNCREEK APARTMENTS I, LLC, a
foreign limited liability company, **D/B/A THE
LOFTS AT THORNCREEK; THORNCREEK
MANAGEMENT, LLC,** a foreign limited liability
company,

      Plaintiffs,

v.

**VILLAGE OF PARK FOREST,** an Illinois
municipal corporation; **TOM MICK,** in his
individual capacity and as Village Manager;
**MAE BRANDON,** in her individual capacity
and as Village Trustee; **BONITA DILLARD,**
in her individual capacity and as Village Trustee;
**GARY KOPYCINSKI,** in his individual capacity
and as Village Trustee; **KENNETH W. KRAMER,**
in his individual capacity and as Village Trustee;
**ROBERT MCCRAY,** in his individual capacity
and as Village Trustee; **GEORGIA O'NEILL**
in her individual capacity and as Village
Trustee; **LAWRENCE KERESTES,** in his
individual capacity and as Village
Director of Community Development; **JOHN
A. OSTENBURG,** in his individual capacity and
as mayor of the Village of Park Forest; **SHEILA
MCGANN,** in her capacity as Village clerk only;
and **JOHN** and **JANE DOE,** individual employees,
officers, and/or agents of the Village of Park Forest,

      Defendants,

      Jointly and Severally.

FILED: JULY 29, 2008

08CV4303

JUDGE BUCKLO

MAGISTRATE JUDGE NOLAN

TG

Case Number:_____

Honorable:_____

**JURY DEMAND**

**PLAINTIFFS THORNCREEK APARTMENTS I, LLC AND
THORNCREEK MANAGEMENT, LLC'S COMPLAINT**

**PARTIES, JURISDICTION, AND VENUE**

1.    **Plaintiff Thorncreek Apartments I, LLC ("Thorncreek I")** is a limited liability company organized under the laws of the State of Michigan, with its principal place of business in Farmington Hills, Michigan, conducting business as a rental property in the Village of Park Forest, which is located in Cook County, Illinois.

2.    **Plaintiff Thorncreek Management, LLC ("Thorncreek Management")** is a limited liability company organized under the laws of the State of Michigan, with its principal place of business in Farmington Hills, Michigan, and is the owner of Thorncreek I.

3.    **Defendant Village of Park Forest ("Village")** is an Illinois municipality located in Park Forest, Illinois, and primarily conducting business at 350 Victory Drive, Park Forest, IL 60466.

4.    **Defendant Tom Mick ("Mick")** is the Village Manager of the Village, holding an office at 350 Victory Drive, Park Forest, IL 60466 and residing, on information and belief, in Cook County.

5.    **Defendant Mae Brandon ("Brandon")** is a Trustee of the Village, holding an office at 350 Victory Drive, Park Forest, IL 60466 and residing, on information and belief, at 28 Braeburn Dr., Park Forest, IL 60466-2503.

6.    **Defendant Bonita Dillard ("Dillard")** is a Trustee of the Village, holding an office at 350 Victory Drive, Park Forest, IL 60466 and residing, on information and belief, in Cook County, Illinois.

7.    **Defendant Gary Kopycinski ("Kopycinski")** is a Trustee of the Village, holding an office at 350 Victory Drive, Park Forest, IL 60466 and residing, on information and belief, in Cook County.

8.    **Defendant Kenneth W. Kramer ("Kramer")** is a Trustee of the Village, holding an office at 350 Victory Drive, Park Forest, IL 60466 and residing, on information and belief, at 152 Shabbona Dr., Park Forest, IL 60466-2553.

9.    **Defendant Robert McCray ("McCray")** is a Trustee of the Village, holding an office at 350 Victory Drive, Park Forest, IL 60466 and residing, on information and belief, in Cook County.

10.   **Defendant Georgia O'Neill ("O'Neill")** is a Trustee of the Village, holding an office at 350 Victory Drive, Park Forest, IL 60466 and residing, on information and belief, at 204 Hickory St., Park Forest, IL 60466-1016.

11.   **Defendant Lawrence Kerestes ("Kerestes")** is the Director of Community Development of the Village, and, on information and belief, he is the Village Building Commissioner, holding an office at 350 Victory Drive, Park Forest, IL 60466 and residing, on information and belief, at 316 N Orchard Dr., Park Forest, IL 60466-1141.

12.   **Defendant John A. Ostenburg ("Ostenburg")** is the Mayor of the Village and the President of the Village Board of Trustees, holding an office at 350 Victory Drive, Park Forest, IL 60466 and residing, on information and belief, in Cook County.

13.    **Defendant Sheila McGann ("McGann")** is the Village Clerk, holding an office at 350 Victory Drive, Park Forest, IL 60466 and residing, on information and belief, in Cook County.

14.    The **John** and **Jane Doe** Defendants are unknown employees or agents of the Village that committed and/or assisted in committing the acts described herein.

15.    This Court has original jurisdiction over this Complaint because federal questions are presented with regard to Thorncreek I and Thorncreek Management's claims arising under 42 U.S.C. §§ 1981, 1983, 1985, 1986, and 1988, thus invoking jurisdiction under 28 U.S.C §§ 1331 and 1343; and because any claims arising under state law are claims in excess of $75,000.00 with complete diversity, this Court has jurisdiction under 28 USC § 1332.

16.    Substantially all of the events and/or omissions giving rise to Thorncreek I and Thorncreek Management's claims occurred in the Village and/or Cook County. Venue is therefore appropriate in this Court under 28 U.S.C. §§ 1391 and 1443.

17.    This Court has personal jurisdiction over the Village because it is situated in the State of Illinois and over individual Defendants because they reside in Illinois.

## COMMON ALLEGATIONS

18.    Thorncreek I operated and managed a group of rental townhomes sometimes known as Area F of the Lofts at Thorncreek, formerly known as Thorncreek

Townhomes, in the Village.  Thorncreek I operated Area F for a number of years.  Thorncreek Management was the owner of Thorncreek I.

19.    The racial make-up and residential profile of the tenants in Area F and the Lofts at Thorncreek in general has usually varied from approximately 80% to 90% African American.

## DENIAL OF A BUSINESS LICENSE

20.    In order to operate and rent a multi-family dwelling in the Village, the Village Code of Ordinances (the "Ordinance"), Chapter 22-467, requires one to obtain a license.  For the years of 2005, 2006, and 2007, the Village unlawfully denied Thorncreek I and Thorncreek Management a license.

21.    Chapter 22-468 (a) sets forth the criteria an applicant for a business license must provide the Village if one desires to operate a multi-family dwelling in the Village.  Subsection (b) of the same sets forth exhaustive reviewing criteria of an application:

> Every such application shall be reviewed by the village manager, who shall issue the license if the information stipulated in subsection (a) of this section has been supplied, and if, for an application for a renewal of a license, the applicant is deemed to have made a good-faith effort to comply with all the applicable sections of article IIII of chapter 18 and this chapter. The village manager shall require payment of a fee in the amount of $100.00 with each license application.

22.    The referenced Chapter 18, Article III in subsection (b) of the Ordinance deals principally with the standards, duties, and responsibilities of the owner of a dwelling, as well as the required basic equipment, facilities, lighting, ventilation, heating, and minimum maintenance requirements of said dwelling. *See* Ordinance, Ch. 18, art. III, Divs. 1-4.

23. For the years 2005, 2006, and 2007, Thorncreek I and Thorncreek Management's applications with the Village properly contained the information as specified in § 22-30 and § 22-468 (a). Thorncreek I and Thorncreek Management also paid the requisite $100.00 license fees as specified in subsection (b) and §§ 22-33 and 22-35. Lastly, Thorncreek I and Thorncreek Management, at all relevant times hereto, has "made a good-faith effort to comply with all the applicable sections of article IIII of chapter 18" of the Ordinance.

24. In addition to the above, Thorncreek I and Thorncreek Management submitted detailed management plans for Thorncreek I for the years 2005, 2006, and 2007, plans which were far more extensive than management plans submitted by similarly situated applicants.

25. In spite of the above, Village Manager Mick refused to issue business licenses for Thorncreek I and Thorncreek Management for 2005, 2006, and part of 2007.

26. Mick and/or his superiors (i.e., Ostenburg and/or the Village Board of Trustees) are responsible for establishing final government policy with respect to issuing a business license.

27. Village Clerk McGann and/or the predecessor Village Clerk refused to issue business licenses for Thorncreek I and Thorncreek Management for 2005, 2006, and part of 2007, despite obligation under Chapter 22-28 (b) to do so.

28. McGann and/or the predecessor Village Clerk, and/or their respective superiors (i.e., Ostenburg, Mick, and/or the Village Board of Trustees) are

responsible for establishing final government policy with respect to issuing a business license.

29.   The Village's refusal to issue business licenses to Thorncreek I is based on: (i) Thorncreek I and Thorncreek Management's proper refusal to comply with terms required by the Village that have no support in the Ordinance; (ii) The Village and its agents' (e.g., Mick, Kerestes, Ostenburg, and the several Board members) disdain and hatred of the minority tenants at the Lofts at Thorncreek and its owners and managers; (iii) The Village's desire to systemically drive out the Thorncreek management and African American and Hispanic tenants at the Lofts at Thorncreek.   The conspiracy goes to the highest levels of Village government (Ostenburg and Board of Trustee members) through the lower enforcement levels (e.g., housing inspectors, police, fire department).

30.   In furtherance of the allegations above, and by way of example, on March 22, 2006, a telephone conference was held between Alejandro Martinez of Lehman Brothers, a Mr. Nichol of Lehman Brothers (a financial institution), Kerestes, and possibly others.   Lehman Brothers at the time was interested in entering into a commercial relationship with Thorncreek I and other Thorncreek entities.

31.   During the telephone conference, Lehman Brothers inquired as to the status of Thorncreek's business license (other Thorncreek entities have been denied business licenses by the Village and its agents).   Kerestes indicated that before the Village would issue a business license to the Thorncreek entities, the

Thorncreek entities would have to commit $6,000,000.00 of capital improvements at the Lofts at Thorncreek. Two specific improvements that Kerestes mentioned had to be made before a license would issue were the installation of new windows throughout the Thorncreek complexes and the installation of central air conditioning units. Kerestes indicated that no license to operate would be issued unless a commitment was made for capital improvements consistent with the demands mentioned above.

32.    During the same telephone conference, Kerestes also indicated that Thorncreek was "80% black," "far above the Village average," and that the Village wanted the racial make-up of the residents at Thorncreek to be similar to the rest of the Village; i.e., more "white." Kerestes also indicated that the rents at Thorncreek were too low, and that the Village wanted the rents to be increased so that Thorncreek would be "more attractive to whites," and in order to change the racial make up.

33.    As a result, the financing with Lehman Brothers fell through and/or was substantially delayed, at extraordinary cost, expense, and profit to Thorncreek I and Thorncreek Management.

34.    It was not until March 2007 that the Village finally gave Thorncreek I a business license, at extraordinary cost, expense, and profit to Thorncreek I and Thorncreek Management.

35.    Over the years, the Village, through its agents, made demands that Thorncreek I and Thorncreek Management invest substantial amounts of money into the

8

structure, infrastructure, and amenities at the Lofts at Thorncreek as a precondition to the issuance of business licenses.

36. None of the above "conditions" for a business license cited by Kerestes or the Village are required under Chapter 18, Article II of the Ordinance or Chapter 22-468 of the Ordinance.

37. The Thorncreek entities' non-compliance with the Village's and Kerestes' demands is not a proper basis for the denial of a business license under Chapter 22-468. For Thorncreek I and Thorncreek Management to comply with certain of the Village's requirements would require Thorncreek I and Thorncreek Management to violate local, state, and federal law, including 42 USC §§ 3604, 3617, 3631 (the Fair Housing Act).

38. The Village's vision for Thorncreek to be "more attractive to whites"; the Village's desire to see the rents increased to discourage African American and Hispanic tenants; the Village's desire that Thorncreek's racial make-up to be consistent throughout the Village; and the Village's demands for multi-million dollar investment in the properties are purported requirements neither found in Chapter 18, Article II of the Ordinance or Chapter 22-468 of the Ordinance; nor are they proper bases for denying a business license under Chapter 18, Article II of the Ordinance or Chapter 22-468 of the Ordinance. In fact, certain of that criteria is illegal based on the Village's own Ordinance, Chapter 22-472.

39. By way of another example, on March 24, 2006, a meeting was held at the Village Hall. The persons in attendance were: Kerestes; Kathy Fisher (Village

9

Housing Inspector); Dinah Gonzales (an employee of Atlantic Management Corporation that manages Thorncreek I); and Patricia Clapper, Regional (Property Manager for Thorncreek I).

40.    At the meeting, Patricia Clapper asked Kerestes about the status of the Thorncreek entities' business license applications. Kerestes explained that he was dissatisfied with David Clapper's (a principal of the Thorncreek entities) (alleged) failure to make improvements to the properties, citing examples such as kitchen upgrades, central air conditioning units, and new windows --- upgrades that are not required by the Ordinance for a business license to issue.

41.    At the meeting, Kerestes again voiced "concerns" about Thorncreek. Kerestes stated that the Village was concerned about Thorncreek's "racial make-up." Specifically, that David Clapper is a "slum lord"; and that while the 2000 census showed that the Village was "58% white, 39% black and the rest mixed ethnic", in 2006 residents are "90% black and 10% white." Kerestes explained that this put a burden on Village services and the Village Police Department, because of more drug problems and domestic complaints. Kerestes also explained that this put a burden on the Village school system because these black families "were not responsible for their children." Kerestes advised that making the above improvements will improve the perception of Thorncreek and draw a "better" clientele; and that the Village Board of Trustees had expressed similar concerns about the racial changes in the Village and Thorncreek.

42.  None of the above "improvements" cited by Kerestes and the Village Board are required under Chapter 18, Article II of the Ordinance or Chapter 22-468 of the Ordinance before the Village Manager "shall" issue a business license.

43.  The alleged failure to make the above "improvements" cited by Kerestes and the Village Board is not a proper basis for the denial of a business license under Chapter 22-468.

44.  There is no requirement under Chapter 18, Article II of the Ordinance or Chapter 22-468 of the Ordinance that the property owner improve the "black/white" ratio.

45.  The Village's "concerns" over the racial make-up of Thorncreek is not a proper basis for denying Thorncreek I and Thorncreek Management a business license and the ability to operate. Such criteria is, in fact, illegal.

46.  Village Manager Mick and Ostenburg consistently communicated to Thorncreek I and Thorncreek Management their concerns over the types of people to whom Thorncreek I and Thorncreek Management rents and Area F's "tenant profile"; and they consistently suggest ways for Thorncreek I and Thorncreek Management to "upgrade" the tenant profile, making veiled threats that such upgrades are preconditions to obtaining a business license and acquiring other permits.

47.  As a precondition to obtaining a business license, the Village demanded and required Thorncreek I and Thorncreek Management to collect and share Thorncreek's racial statistics (i.e., the Village wants to know how many

African Americans or other minorities Thorncreek has at the Lofts at Thorncreek).

48.    The Village's aforementioned "concerns" are not proper factors under the Ordinance, Chapter 22-32.

49.    The factors set forth in Chapter 22-32 are also unconstitutionally vague and vest inordinate and ambiguous discretion in the Village Manager. The factors do not give an individual of ordinary intelligence a reasonable opportunity to comply with the discretionary factors vested in the Manager; i.e., there is no notice of what the law requires.

50.    Furthermore, Chapter 22-32 lacks explicit standards for its application, and impermissibly delegates basic policy matters to the Village Manager for resolution on an *ad hoc* and subjective basis, with dangers of arbitrary and discriminatory applications. On information and belief, the Village, through Mick, impermissibly relied on this section to deny Thorncreek I business licenses.

51.    The Village's actions in denying business licenses are arbitrary, irrational, and racially motivated.

52.    Thorncreek I and Thorncreek Management had a vested right and a legitimate entitlement to operate Area F; and had a vested right and legitimate entitlement in a business license because Thorncreek I and Thorncreek Management, at all relative times hereto, complied with the Ordinance procedures for the issuance of a license.

53. The issuance of a business license is non-discretionary when the provisions of the Ordinance have been met.

54. On information and belief, the Village Board and Ostenburg instructed Mick and McGann and/or predecessor Village Clerks not to issue Thorncreek I business licenses.

55. The demands the Village and its agents imposed on Thorncreek I and Thorncreek Management were not required on similarly situated owners of multi-dwelling units.

56. Other similarly situated property owners in the Village are not and have not been required to improve the "racial make-up" and/or the "black/white" ratio of its tenants outlined above as a precondition to acquiring a business license and to operate their businesses.

57. Other similarly situated property owners in the Village have not been required to increase rent as a precondition to acquiring a business license and to operate their businesses.

58. The Village's efforts, through its agents, by denying Thorncreek I business licenses was part of a larger plan, policy, custom, conspiracy to drive Thorncreek I and Thorncreek Management and its African American and Hispanic tenants out of the Village.

## DENIAL OF INSPECTIONS AND CERTIFICATES OF OCCUPANCY

59. Under the Ordinance, Chapter 18-255, each time a tenant moves out of a dwelling unit, the Village requires a new certificate of occupancy to issue before a new tenant may move in. A certificate of occupancy will not issue

until the owner applies for and pays an application fee, and the Village conducts and inspection of the dwelling unit.

60.     Under Ordinance Section 18-255(b):

> A certificate of occupancy *shall be issued by the village building commissioner* upon a determination that there are no violations of any applicable section of this Code in the interior and exterior of the dwelling unit after inspection has been made in accordance with the following:
>
> > (1) The building commissioner or his designated department employee inspects the interior and exterior of the dwelling unit to ascertain only visible Code violations. . . . (emphasis added)

61.     The Village intentionally denied the Lofts at Thorncreek inspections and/or refuses to give the Lofts at Thorncreek sufficient inspections to keep pace with tenant turnover.  The Village did this to frustrate Thorncreek I and Thorncreek Management's day to day business operations and prospective tenants.

62.     Over the last year, the Village has refused to perform any inspections of Area G (owned by Thorncreek II, another area in the Lofts at Thorncreek); and prior thereto, the Village gave limited inspections for Area F and Area G.

63.     With respect to the limited inspections the Village does conduct (which are frequently cancelled at the last minute and "rescheduled"), Village inspectors nit-pick and are overly critical (e.g., requiring tree branch trimming) or overbroad (the observance of some flaking paint leads to a demand to re-paint the whole unit), and go beyond the scope of a proper inspection.  The end result is, more often than not, the Village inspectors fail the inspected unit, and the building commissioner, Kerestes, denies a certificate of occupancy.

64.    Thereafter, the Thorncreek entities repair the alleged minor issues.    New inspections (which the Village systemically limits to the Lofts at Thorncreek only) are then required, at significant time, effort, and expense (including, at times, new application fees).  Then at each re-inspection, the Village inspectors again nit-pick and find new alleged problems with the unit, again driving up costs for repair and requiring re-inspections.    All the while, the units cannot be rented, because they lack certificates of occupancy, and prospective tenants, otherwise ready, willing, able, and waiting to move into Area F, G, and H, leave Thorncreek for other housing, all at significant cost and lost profits to the Thorncreek entities.

65.    The "repairs" the Village requires of Thorncreek are not maintenance, have nothing to do with safety, and have no support in the Ordinance.

66.    The repairs the Village requires of Thorncreek are not required on similarly situated owners or managers of multi-dwelling units.

67.    At all times relative hereto, Thorncreek I and Thorncreek Management have properly filed applications for inspections and paid the requisite fees.

68.    At all time relative hereto, prospective units to be inspected in Area F had no applicable Ordinance violations.

69.    Thorncreek I and Thorncreek Management had property rights and interests in the Area F units and in certificates of occupancy.

70.    The issuance of a certificate of occupancy is non-discretionary when the Ordinance terms have been met.

71.    On information and belief, the Village Board and Ostenburg instructed Kerestes and his subordinates to fail Thorncreek I and Thorncreek Management's inspections and deny Thorncreek I and Thorncreek Management certificates of occupancy.

72.    Kerestes and/or his superiors (i.e., Ostenburg, Mick, and/or the Village Board of Trustees) are responsible for establishing final government policy with respect to issuing a certificate of occupancy.

73.    The Village, through its inspectors, and at the direction of Kerestes, Mick, the Board, and/or Ostenburg, wrongfully denied Thorncreek I and Thorncreek Management certificates of occupancy.

74.    The Village's actions in denying certificates of occupancy were arbitrary, irrational, and racially motivated.

75.    Thorncreek I and Thorncreek Management had a list of potential tenants who cannot move into Area F because of the Village and its agents' aforementioned actions.  These prospective tenants inevitably moved on to find other housing, resulting in significant losses to Thorncreek I and Thorncreek Management.

76.    The Village's efforts, through its agents, in failing inspections and denying certificates of occupancy was part of a larger plan, policy, custom, conspiracy to drive Thorncreek I and Thorncreek Management and their African American and Hispanic tenants out of the Village and to discourage prospective African American and Hispanic tenants.

**DENIAL OF PERMITS**

77. The Village Ordinance requires one who seeks to erect signage to apply for and obtain a permit. Chapter 118-302.

78. Mick and/or his superiors (i.e., Ostenburg and/or the Village Board of Trustees) are responsible for establishing final government policy with respect to issuing permits.

79. At all times relative hereto, Thorncreek I and Thorncreek Management properly applied for signage to be used to promote renting at the Lofts at Thorncreek. The Village, however, through its agents, intentionally and arbitrarily denied Thorncreek I and Thorncreek Management's applications or rejected them outright (i.e., the Village will not accept them).

80. The inability to use signs as a marketing tool substantially affected Thorncreek I and Thorncreek Management's ability to market to renters and conduct business.

81. Employees and agents of the Village physically removed Thorncreek signage.

82. The Village and its agents unlawfully required Thorncreek I to apply for permits relative to issues like parking, curb cuts, and other requirements and have otherwise denied permits relative to same.

83. Thorncreek I and Thorncreek Management had property rights and interests in the Area F units, in the sign permits and other permits, and in the freedom to market and rent the property unobstructed by the irrational acts of the Village and its agents.

84.   The issuance of permits is non-discretionary when the Ordinance terms have been met.

85.   The Village's refusal to approve Thorncreek's applications for permits is arbitrary, irrational, and racially motivated.

86.   The refusal to accept Thorncreek I and Thorncreek Management's applications for permits and to approve Thorncreek I and Thorncreek Management's applications for permits are actions the Village has not taken with respect to similarly situated owners of multi-dwelling units.

87.   The Village's efforts in denying Thorncreek I the right to permits is part of a larger plan, policy, custom, conspiracy to drive Thorncreek I and Thorncreek Management out of the Village and discourage prospective African American and Hispanic renters.

**OTHER ISSUES**

88.   The Village police target and harass Thorncreek residents based on their race, will not properly patrol and make service calls to Area F, and do not enforce the law at the Lofts at Thorncreek, refusing to make arrests or otherwise warn those engaging in suspicious activity.

89.   The Village police and fire departments have harassed Thorncreek I by alleging that Thorncreek had alleged defective carbon monoxide detectors. The harassment occurred even though the Village police and fire departments knew the issue was with the manufacturer, not Thorncreek.

90.   The Village, through its authorized agents, made constant demands on Thorncreek to upgrade Area F; but when Thorncreek I and Thorncreek

Management tried to upgrade the property, the Village ticketed Thorncreek I and Thorncreek Management because of lack of permits --- permits the Village will not approve.

91.   The Village, through its authorized agents, also harassed Thorncreek by consistently targeting Thorncreek management for tickets for other alleged Ordinance violations, targeted discrimination that the Village does not impose on others.

92.   All of the aforementioned actions by the Village and its agents effectively destroyed Thorncreek Management's investment and assets in Area F, and caused Thorncreek I and Thorncreek Management's lenders to threaten and/or call and/or accelerate loans and security, including, possibly, Thorncreek I and Thorncreek Management's right to sue in this and other actions.  Thorncreek Management therefore has standing to assert claims on its own behalf against the Village and its agents.

93.   Thorncreek Management's injuries are separate, distinct, and not derivative of Thorncreek I's injuries.

94.   Thorncreek Management's claims against the Defendants are entitled to be redressed by Thorncreek Management directly, and not through an investment.

## DAMAGES

95.   The denial of business licenses, permits, certificates of occupancy, the denial of Thorncreek I and Thorncreek Management's rights to operate its business, the defamation, the targeted discrimination, and the acts and omissions

described above have proximately caused Plaintiffs substantial damages, including, but not limited to:

(i)     loss of the beneficial use of the property;

(ii)    lost profits;

(iii)   lost rent;

(iv)    lost business opportunities;

(v)     driving down the value of Area F;

(vi)    frustrated Thorncreek I and Thorncreek Management's ability to attract and market to new tenants and retain existing ones;

(vii)   lost goodwill;

(viii)  the ability to pay its mortgage;

(ix)    hurt Thorncreek I and Thorncreek Management's standing with their lender;

(x)     damaged Thorncreek I, Thorncreek Management, and their investors' and managing members' credit;

(xi)    inhibited raising money from new investors;

(xii)   pay taxes;

(xiii)  pay vendors and do business with vendors;

(xiv)   make capital and physical improvements to the property;

(xv)    caused delinquencies and vacancies;

(xvi)   negative publicity;

(xvii)  and all other incidental and consequential damages.

## COUNT I --- DENIAL OF THORNCREEK I AND THORNCREEK MANAGEMENT'S RIGHTS TO EQUAL PROTECTION OF THE LAWS IN VIOLATION OF THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION:

### 42 U.S.C. § 1983

96.   Plaintiffs incorporate Paragraphs 1-95 as if each such Paragraph were re-stated in its entirety.

97.   At all times relevant hereto, the conduct of the Village and all Defendants was subject to 42 U.S.C. §§ 1983, 1985, 1986, and 1988.

98.   The Village's agents and the Defendants are employees and/or executives of the Village and at all relevant times hereto were acting under color of state law and within the scope of each of their respective vested, actual, and/or apparent authority.

99.   Ostenburg and/or Kerestes and/or Mick and/or Trustees of the Board and/or other Village executives, employees, or agents created an unconstitutional policy and/or custom of the Village to impose the requirements set forth *supra*, which are separate, distinct, and different from those legislatively enacted, provided, and expressed in the Ordinance, before business licenses, permits, and certificates of occupancy would issue to Thorncreek I.

100.   The Village, through its executive officers and/or Board of Trustees, had knowledge and/or acquiesced in the policy and/or custom of the Village imposing requirements separate, distinct, and different from those legislatively enacted, provided, and expressed in the Ordinance before business licenses, permits, and certificates of occupancy would issue to Thorncreek I.

101. Ostenburg and/or Kerestes and/or Mick and/or Trustees of the Board and/or other Village executives, employees, or agents created an unconstitutional policy and/or custom of the Village to discourage African-American and Hispanic residents from the Lofts at Thorncreek and/or the Village at large.

102. The Village, through its executive officers and/or Board of Trustees, had knowledge and/or acquiesced in the policy and/or custom of discouraging African-American and Hispanic residents from the Lofts at Thorncreek and/or the Village at large.

103. Ostenburg and/or Kerestes and/or Mick and/or Trustees of the Board and/or other Village executives, employees, or agents collectively conspired to impose legislative requirements separate, distinct, and different from those provided by the Ordinance before business licenses, permits, and certificates of occupancy will issue to Thorncreek I.

104. Imposing requirements separate, distinct, and different from those legislatively and expressly provided by the Ordinance before business licenses, permits, and certificates of occupancy would issue to Thorncreek I and Thorncreek Management, but not applying the same requirements imposed on Thorncreek I and Thorncreek Management against other similarly situated property owners/renters, is not a permissible or legitimate government objective.

105. Discouraging African-American and Hispanic residents from the Lofts at Thorncreek and/or the Village at large and/or improving the "black/white" ratio is not a permissible or legitimate government objective. It is illegal.

106. On information and belief, other similarly situated property owners in the Village, as a precondition to attaining Village business licenses, permits, and certificates of occupancy, were not required to meet legislative criteria other than that which is provided in the Ordinance.

107. The Village, through Ostenburg and/or Kerestes and/or Mick and/or Trustees of the Board and/or other Village executives, employees, or agents, treated Thorncreek I and Thorncreek Management different from other property owners/renters, disparate treatment which is irrational, arbitrary, and vindictive.

108. The Village did not apply the Ordinance in an equal manner to all residents of the Village.

109. The Village's agents, including, but not limited to, Ostenburg and/or Kerestes and/or Mick and/or Trustees of the Board and/or other Village executives, employees, or agents knew or should have reasonably known that denying and/or conspiring to deny Thorncreek I and Thorncreek Management business licenses, permits, and certificates of occupancy under the facts and circumstances described herein violated Thorncreek I and Thorncreek Management's equal protection rights and other established statutory and constitutional law.

110. A reasonable state actor, agent, or official would have known that denying Thorncreek I and Thorncreek Management business licenses, permits, and certificates of occupancy under the facts and circumstances described herein

violated Thorncreek I and Thorncreek Management's equal protection rights and other established statutory and constitutional law.

111.    The above actions have proximately caused Thorncreek I and Thorncreek Management substantial damages including those set forth in Paragraph 95 herein.

WHEREFORE, Plaintiffs request: (i) that a judgment be entered against the Village and each of the Defendants, jointly and severally, in an amount commensurate with Plaintiffs' respective damages; (ii) punitive damages be assessed against the Village and the Defendants in favor of Plaintiffs; and (iii) award Plaintiffs for their costs and statutory attorney fees.

### COUNT II --- DENIAL OF THORNCREEK I AND THORNCREEK MANAGEMENT'S RIGHTS TO PROCEDURAL AND SUBSTANTIVE DUE PROCESS IN VIOLATION OF THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION:

### 42 U.S.C. § 1983

112.    Plaintiffs incorporate Paragraphs 1-95 as if each such Paragraph were re-stated in its entirety.

113.    At all times relevant hereto, the conduct of the Village and the Defendants were subject to 42 U.S.C. §§ 1983, 1985, 1986, and 1988.

114.    The Village's agents and the Defendants are employees and/or executives of the Village and at all relevant times hereto were acting under color of state law and within the scope of each of their respective vested, actual, and/or apparent authority.

115.    Operating a business, business licenses, permits, and certificates of occupancy are rights in which Thorncreek I and Thorncreek Management had property

interests because Thorncreek I and Thorncreek Management, at all times relative hereto, complied with the Village Ordinance.

116. The right to be free from targeted discrimination and selective enforcement from public bodies is a liberty interest secured by the U.S. Constitution.

117. Under Village law, an applicant is entitled to business licenses, permits, and certificates of occupancy if he/she/it satisfies the requirements set forth in the Ordinance.

118. The issuance of business licenses, permits, and certificates of occupancy is non-discretionary if the criteria in the Ordinance is satisfied.

119. Mick and McGann and/or predecessor Village Clerks failed to issue Thorncreek I and Thorncreek Management business licenses, despite the fact that Thorncreek I and Thorncreek Management complied with the criteria set forth the Ordinance.

120. Kerestes failed to issue Thorncreek I and Thorncreek Management certificates of occupancy, despite the fact that Thorncreek I and Thorncreek Management complied with the criteria set forth the Ordinance.

121. The Village Board of Trustees and/or Ostenburg and/or Mick failed to approve Thorncreek I and Thorncreek Management's applications for permits, despite the fact that Thorncreek I and Thorncreek Management complied with the criteria set forth the Ordinance.

122. The Village, the Board of Trustees, Ostenburg, Kerestes, Mick, and/or Village executives, employees, and/or agents, deprived Thorncreek I and Thorncreek

Management of property rights in violation of the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution.

123. The Village, the Board of Trustees, and Ostenburg deprived Thorncreek I and Thorncreek Management of liberty interests by selectively enforcing ordinances against Thorncreek I and Thorncreek Management.

124. The Village, through its agents, deprived Thorncreek I and Thorncreek Management of liberty interests by selectively targeting Thorncreek I and Thorncreek Management for tickets and other unlawful harassment.

125. The Village's denial to Thorncreek I and Thorncreek Management, through the Board of Trustees, Ostenburg, Kerestes, Mick, and/or Village executives, employees, and/or agents, of business licenses, permits, and certificates of occupancy amounts to deprivation of a property rights without procedural due process in violation of the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution.

126. The Village's denial to Thorncreek I and Thorncreek Management, through the Board of Trustees, Ostenburg, Kerestes, Mick, and/or Village executives, employees, and/or agents, of the right to be free from targeted and selected discrimination without procedural due process amounts to a violation of the Due Process Clause of Fourteenth Amendment of the U.S. Constitution.

127. There are no adequate post-deprivation remedies available to Thorncreek I and Thorncreek Management for the Village's failure to issue business licenses, permits, and certificates of occupancy to Thorncreek I and Thorncreek Management.

128.   There are no adequate post-deprivation remedies available to Thorncreek I and Thorncreek Management for the Village's targeted and selected discrimination.

129.   The Village's denial to Thorncreek I and Thorncreek Management, through the Board of Trustees, Ostenburg, Kerestes, Mick, and/or Village executives, employees, and/or agents, of business licenses, permits, and certificates of occupancy is arbitrary, irrational, and unreasonable bearing no substantial relationship to the public health, safety, or welfare and is therefore in violation of the substantive component of the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution.

130.   The Village's targeted and selected discrimination is arbitrary, irrational, and unreasonable bearing no substantial relationship to the public health, safety, or welfare and is therefore in violation of the substantive component of the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution.

131.   Ostenburg and/or Kerestes and/or Mick and/or Trustees of the Board and/or other Village executives, employees, or agents created an unconstitutional policy and/or custom of the Village to deny Thorncreek I and Thorncreek Management of the aforementioned property rights, by imposing requirements which are separate, distinct, and different from those provided by the Ordinance.

132.   Ostenburg and/or Kerestes and/or Mick and/or Trustees of the Board and/or other Village executives, employees, or agents created an unconstitutional policy and/or custom of the Village to deny Thorncreek I of the

aforementioned liberty rights, by targeting Thorncreek I and Thorncreek Management for selective discrimination.

133. The Village, through the Board of Trustees, Ostenburg, Kerestes, Mick, and/or Village executives, employees, and/or agents, had knowledge and/or acquiesced in the policy and/or custom of denying Thorncreek I and Thorncreek Management the aforementioned property rights and liberty rights, by imposing requirements which are separate, distinct, and different from those legislatively enacted, provided, and expressed by the Ordinance, and by targeting Thorncreek I and Thorncreek Management for selective discrimination.

134. The Village, through the Board of Trustees, Ostenburg, Kerestes, Mick, and/or Village executives, employees, and/or agents, knew or should have reasonably known that denying Thorncreek I and Thorncreek Management business licenses, permits, and certificates of occupancy under the facts and circumstances described herein violated Thorncreek I and Thorncreek Management's due process rights and other established statutory and constitutional law.

135. The Village, through the Board of Trustees, Ostenburg, Kerestes, Mick, and/or Village executives, employees, and/or agents, knew or should have reasonably known that targeting Thorncreek I and Thorncreek Management for selective discrimination under the facts and circumstances described herein violated Thorncreek I and Thorncreek Management's due process rights and other established statutory and constitutional law.

136.    A reasonable state actor, agent, or official would have known that denying Thorncreek I and Thorncreek Management property and liberty rights under the facts and circumstances described herein violated Thorncreek I and Thorncreek Management's due process rights and other established statutory and constitutional law.

137.    The above actions have proximately caused Thorncreek I and Thorncreek Management substantial damages including those set forth in Paragraph 95 herein.

WHEREFORE, Plaintiffs request: (i) that a judgment be entered against the Village and each of the Defendants, jointly and severally, in an amount commensurate with Plaintiffs' respective damages; (ii) punitive damages be assessed against the Village and the Defendants in favor of Plaintiffs; and (iii) award Plaintiffs for their costs and statutory attorney fees.

### COUNT III --- TAKING OF THORNCREEK I AND THORNCREEK MANAGEMENT'S PROPERTY AND INVERSE CONDEMNATION IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION:

### 42 U.S.C. § 1983

### AND TAKING IN VIOLATION OF THE ILLINOIS CONSTITUTION

138.    Plaintiffs incorporate Paragraphs 1-95 as if each such Paragraph were re-stated in its entirety.

139.    At all times relevant hereto, the conduct of the Village and the Defendants were subject to 42 U.S.C. §§ 1983, 1985, 1986, and 1988.

140.    The Village's agents and the Defendants are employees and/or executives of the Village and at all relevant times hereto were acting under color of state

law and within the scope of each of their respective vested, actual, and/or apparent authority.

141.   The Village's denial, through the Board of Trustees, Ostenburg, Kerestes, Mick, and/or Village executives, employees, and/or agents, of business licenses, permits, certificates of occupancy, making demands (upgrades, changing the racial make-up, etc.) not found in the Ordinance (and some which violate local, state, and federal law) resulted in a taking of Area F, because the denial meant that, under the Ordinance, Thorncreek I and Thorncreek Management could not legally operate in the Village, could not rent housing, could not market the property, and could not comply with local, state, and federal discrimination laws, thereby denying Thorncreek I of all beneficial and productive use of Area F.

142.   The Village, through the Board of Trustees, Ostenburg, Kerestes, Mick, and/or Village executives, employees, and/or agents, created an unconstitutional policy and/or custom of the Village to take Area F without just compensation.

143.   The Village, through the Board of Trustees, Ostenburg, Kerestes, Mick, and/or Village executives, employees, and/or agents, had knowledge and/or acquiesced in the policy and/or custom of the Village of taking Area F without just compensation.

144.   The Village's actions and regulations, through its agents, of Area F were so onerous that the effect was tantamount to a direct appropriation or ouster.

145.    The Village's actions described herein did not substantially advance legitimate state interests and otherwise denied Thorncreek I and Thorncreek Management of economically viable use of Area F.

146.    The acts described above amounted to a regulatory taking of the Area F property by the Village.

147.    The acts described above required inverse condemnation of Area F, requiring the Village to buy Area F and justly compensate Thorncreek I and Thorncreek Management for the same.

148.    The above actions have otherwise proximately caused Thorncreek I and Thorncreek Management substantial damages including those set forth in Paragraph 95 herein.

WHEREFORE, Plaintiffs request: (i) that a judgment be entered against the Village and each of the Defendants, jointly and severally, in an amount commensurate with Plaintiffs' respective damages; (ii) punitive damages be assessed against the Village and the Defendants in favor of Plaintiffs; (iii) award Plaintiffs for their costs and statutory attorney fees; and (iv) such other relief that this Court or the fact-finder deems appropriate, including requiring the Village to pay just compensation for the taking.

## COUNT IV --- CONSPIRACY TO DEPRIVE THORNCREEK III AND THORNCREEK MANAGEMENT'S RIGHTSTO EQUAL PROTECTION OF THE LAWS IN VIOLATION OF THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION:

### 42 U.S.C. § 1985

149.    Plaintiffs incorporate Paragraphs 1-95 as if each such Paragraph were re-stated in its entirety.

150. At all times relevant hereto, the conduct of the Village and the Defendants were subject to 42 U.S.C. §§ 1983, 1985, 1986, and 1988.

151. The Village's agents and the Defendants are employees and/or executives of the Village and at all relevant times hereto were acting under color of state law and within the scope of each of their respective vested, actual, and/or apparent authority.

152. The Village and/or Ostenburg and/or Kerestes and/or Mick and/or Trustees of the Village Board and/or other Village executives, employees, or agents collectively conspired for the purpose of depriving, either directly or indirectly, Plaintiffs and/or their tenants at the Lofts at Thorncreek and/or potential tenants of the Lofts at Thorncreek of the equal protection of the laws and/or equal privileges and immunities under the laws.

153. The Village and each of the Defendants, and/or by and through their agents, committed acts in furtherance of the conspiracy by denying Thorncreek I and Thorncreek Management business licenses, denying permits, denying certificates of occupancy, requiring Thorncreek I and Thorncreek Management to comply with a unique set of rules not found in the Ordinance and that no other owner/manager of a multi-unit dwelling had to comply, and by making and publishing slanderous and libelous statements about Thorncreek I and Thorncreek Management, the Lofts at Thorncreek, and its management.

154. Thorncreek I and Thorncreek Management and/or their tenants at the Lofts at Thorncreek and/or potential tenants of the Lofts at Thorncreek have been

injured and deprived of rights and privileges secured by the law because of the Village's systemic conspiracy and efforts to drive out lower income and minority residents from Area F and the Village at large.

155.    The Village and each of the Defendants, by and through their agents, committed these acts for the purpose of engaging in invidious racial discrimination with the intent of discouraging African-American and Hispanic residents from enjoying tenancy at the Lofts at Thorncreek and/or enjoying tenancy in the Village at large; and depriving Thorncreek I and Thorncreek Management business licenses, permits, and certificates of occupancy, in furtherance of that goal.

156.    The above actions have proximately caused Thorncreek I and Thorncreek Management substantial damages including those set forth in Paragraph 95 herein.

WHEREFORE, Plaintiffs request: (i) that a judgment be entered against the Village and each of the Defendants, jointly and severally, in an amount commensurate with Plaintiffs' respective damages; (ii) punitive damages be assessed against the Village and the Defendants in favor of Plaintiffs; (iii) award Plaintiffs for their costs and statutory attorney fees; and (iv) such other relief that this Court or the fact-finder deems appropriate, including requiring the Village to pay just compensation for the taking.

### COUNT V --- WRONGFUL FAILURE TO PREVENT A 42 U.S.C. § 1985 VIOLATION:

### 42 U.S.C. § 1986

157.    Plaintiffs incorporate Paragraphs 1-95 as if each such Paragraph were re-stated in its entirety.

158.   At all times relevant hereto, the conduct of the Village and the Defendants were subject to 42 U.S.C. §§ 1983, 1985, 1986, and 1988.

159.   The Village's agents and the Defendants are employees and/or executives of the Village and at all relevant times hereto were acting under color of state law and within the scope of each of their respective vested, actual, and/or apparent authority.

160.   The Village, through its agents, and some or all of the Defendants, had actual knowledge that the conspiracy wrongs described herein were being committed or about to be committed.

161.   The Village, through its agents, and some or all of the Defendants, had the power (statutory, enforcement, through employment, oversight, or otherwise) to prevent and/or aid in preventing the commission of the conspiracy described herein.

162.   The Village, through its agents, and some or all of the Defendants, refused to prevent and/or aid in the prevention of the conspiracy described herein.

163.   The wrongful acts in furtherance of the conspiracy described herein could have been prevented by reasonable diligence of the Village, through its agents, and some or all of the Defendants.

164.   The above actions have proximately caused Thorncreek I and Thorncreek Management substantial damages including those set forth in Paragraph 95 herein.

WHEREFORE, Plaintiffs request: (i) that a judgment be entered against the Village and each of the Defendants, jointly and severally, in an amount commensurate

with Plaintiffs' respective damages; (ii) punitive damages be assessed against the Village and the Defendants in favor of Plaintiffs; (iii) award Plaintiffs for their costs and statutory attorney fees; and (iv) such other relief that this Court or the fact-finder deems appropriate, including requiring the Village to pay just compensation for the taking.

## COUNT VI --- DENIAL OF EQUAL PROTECTION IN VIOLATION OF THE ILLINOIS CONSTITUTION

165.    Plaintiffs incorporate Paragraphs 1-95 as if each such Paragraph were re-stated in its entirety.

166.    The actions of the Village and its agents and the actions of the Defendants described violated Thorncreek I and Thorncreek Management's Equal Protection rights under the Illinois Constitution.

167.    The Village is bound by the acts of its executives, employees, agents, and representatives.

168.    The above actions, re-stated and incorporated herein, have proximately caused Thorncreek I and Thorncreek Management substantial damages including those set forth in Paragraph 95 herein.

WHEREFORE, Plaintiffs request: (i) that a judgment be entered against the Village and each of the Defendants, jointly and severally, in an amount commensurate with Plaintiffs' respective damages; (ii) punitive damages be assessed against the Village and the Defendants in favor of Plaintiffs; and (iii) award Plaintiffs for their costs and statutory attorney fees.

## COUNT VII --- DENIAL OF DUE PROCESS IN
## VIOLATION OF THE ILLINOIS CONSTITUTION

169.    Plaintiffs incorporate Paragraphs 1-95 as if each such Paragraph were re-stated in its entirety.

170.    The actions of the Village and its agents and the actions of the Defendants described herein violated Thorncreek I and Thorncreek Management's due process rights under the Illinois Constitution.

171.    The Village is bound by the acts of its executives, employees, agents, and representatives.

172.    The above actions, re-stated and incorporated herein, have proximately caused Thorncreek I and Thorncreek Management substantial damages including those set forth in Paragraph 95 herein.

WHEREFORE, Plaintiffs request: (i) that a judgment be entered against the Village and each of the Defendants, jointly and severally, in an amount commensurate with Plaintiffs' respective damages; (ii) punitive damages be assessed against the Village and the Defendants in favor of Plaintiffs; (iii) award Plaintiffs for their costs and statutory attorney fees; and (iv) such other relief that this Court or the fact-finder deems appropriate, including requiring the Village to pay just compensation for the taking.

## COUNT VIII --- VIOLATION OF THE ILLINOIS CIVIL RIGHTS ACT

173.    Plaintiffs incorporate Paragraphs 1-95 as if each such Paragraph were re-stated in its entirety.

174.    The actions of the Village and its agents and the actions of the Defendants described herein violated the Illinois Civil Rights Act.

175.   The Village utilized criteria or methods of administration that had the effect of subjecting Area F tenants and prospective tenants to discrimination because of their race, color, or national origin. The same has proximately caused harm to Thorncreek I and Thorncreek Management.

176.   The Village is bound by the acts of its executives, employees, agents and representatives.

177.   The above actions, re-stated and incorporated herein, have proximately caused Thorncreek I and Thorncreek Management substantial damages including those set forth in Paragraph 95 herein.

WHEREFORE, Plaintiffs request: (i) that a judgment be entered against the Village and each of the Defendants, jointly and severally, in an amount commensurate with Plaintiffs' respective damages; (ii) punitive damages be assessed against the Village and the Defendants in favor of Plaintiffs; and (iii) award Plaintiffs for their costs and statutory attorney fees.

## COUNT IX --- LAND USE

178.   Plaintiffs incorporate Paragraphs 1-95 as if each such Paragraph were re-stated in its entirety.

179.   The actions of the Village and its agents and the actions of the Defendants described herein, including, but not limited to, the denial of business licenses, permits, certificates of occupancy, making demands (upgrades, changing the racial make-up, etc.) not found in the Ordinance (and some which violate local, state, and federal law) are impermissible land-use restrictions.

180.    These actions and restrictions mean that, under the Ordinance, Thorncreek I and Thorncreek Management could not legally operate in the Village, could not rent housing, could not market the property, could not compete, and could not comply with local, state, and federal discrimination laws, thereby denying Thorncreek I and Thorncreek Management of all economically beneficial and productive use of Area F.

181.    The Village's actions and regulations, through its agents, of Area F were so onerous that the effect is tantamount to a direct appropriation or ouster.

182.    The Village's actions and regulations described herein did not substantially advance legitimate state or municipal interests and otherwise denied Thorncreek I and Thorncreek Management of economically viable use of Area F.

183.    The acts and regulations described above amounted to a regulatory taking of the Area F property by the Village.

184.    The actions of the Village and its agents and the actions of the Defendants described herein amounted to impermissible land use restrictions under Illinois law.

185.    Reasonable state remedies for redress were not available in the Village because the Village, in most instances, would not hear Thorncreek I and Thorncreek Management's requests for business licenses, permits, and certificates of occupancy; and because any such remedies that were provided otherwise violate substantive and procedural due process as set forth herein.

186. The above actions, re-stated and incorporated herein, have proximately caused Thorncreek I and Thorncreek Management substantial damages including those set forth in Paragraph 95 herein.

WHEREFORE, Plaintiffs request: (i) that a judgment be entered against the Village and each of the Defendants, jointly and severally, in an amount commensurate with Plaintiffs' respective damages; (ii) punitive damages be assessed against the Village and the Defendants in favor of Plaintiffs; (iii) award Plaintiffs for their costs and statutory attorney fees; and (vii) such other relief that this Court or the fact-finder deems appropriate, including requiring the Village to pay just compensation for the taking and/or impermissible land use restrictions.

## DEMAND FOR JURY TRIAL

Pursuant to FRCP 38, Plaintiffs demand a jury trial in this case.

Respectfully submitted,

SICILIANO MYCHALOWYCH
VAN DUSEN AND FEUL, PLC

By:___/s/ Andrew W. Mychalowych_____

Andrew W. Mychalowych
(Michigan Bar Number 39602)
Lindsay James
(Michigan Bar Number 66778)
37000 Grand River Avenue, Suite 350
Farmington Hills, MI 48335
248.442.0510
248.442.0518 (facsimile)
Attorneys for Plaintiffs

Dated: July 29, 2008