UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THORNCREEK APARTMENTS I, LLC, | ) | |
| THORNCREEK APARTMENTS II, LLC, and | ) | 08 C 869 |
| THORNCREEK APARTMENTS III, LLC, | ) | 08 C 1225 |
| | ) | 08 C 4303 |
| Plaintiffs, | ) | |
| | ) | Judge Gary Feinerman |
| vs. | ) | |
| | ) | |
| VILLAGE OF PARK FOREST, an Illinois municipal | ) | |
| corporation, TOM MICK, in his individual capacity and as | ) | |
| Village Manager, MAE BRANDON, in her individual | ) | |
| capacity and as Village Trustee, BONITA DILLARD, in | ) | |
| her individual capacity and as Village Trustee, GARY | ) | |
| KOPYCINSKI, in his individual capacity and as Village | ) | |
| Trustee, KENNETH W. KRAMER, in his individual | ) | |
| capacity and as Village Trustee, ROBERT McCRAY, in | ) | |
| his individual capacity and as Village Trustee, GEORGIA | ) | |
| O'NEILL, in her individual capacity and as Village | ) | |
| Trustee, LAWRENCE KERESTES, in his individual | ) | |
| capacity and as Village Director of Community | ) | |
| Development, JOHN A. OSTENBURG, in his individual | ) | |
| capacity and as Mayor of the Village of Park Forest, and | ) | |
| SHEILA McGANN, in her capacity as Village Clerk, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

The history of these consolidated cases is set forth in the opinion resolving the parties'

post-trial motions; the court assumes familiarity with that opinion and its naming and citation

conventions.  Doc. 435 (reported at 2015 WL 2444498 (N.D. Ill. May 20, 2015)) (this docket

entry, like all others, is from 08 C 1225).  In short, after a thirteen-day trial, a jury found in favor

of Thorncreek on its 42 U.S.C. § 1983 class-of-one equal protection claims against the Village of

Park Forest and Village Manager Tom Mick and on its 42 U.S.C. § 1985(3) conspiracy claims

against Mick and Village Director of Community Development Lawrence Kerestes, but it found

1

in favor of the Village, Mick, and Kerestes on Thorncreek's race discrimination claims, and in favor of every other defendant on all of Thorncreek's claims. *Id*. at *1. Thorncreek asked the jury for $20.5 million in compensatory damages: $2.5 million for Thorncreek I, $8 million for Thorncreek II, and $10 million for Thorncreek III. Doc. 405-6 at 27. The jury awarded Thorncreek I and Thorncreek III $1.00 each in nominal damages, Thorncreek II $2,015,000.00 in compensatory damages, and $5,000.00 in punitive damages against Mick and $1,000.00 in punitive damages against Kerestes. *Ibid*. On post-trial motions, the court vacated the judgment against Kerestes (including the $1,000.00 punitive damages award) and awarded Thorncreek prejudgment interest, but otherwise left things unchanged. *Id*. at *3, 11. The court then denied the parties' dueling bills of costs. Docs. 445-446 (reported at 123 F. Supp. 3d 1012 (N.D. Ill. 2015)).

Now before the court are the parties' respective motions for attorney fees and nontaxable expenses under Federal Rule of Civil Procedure 54(d)(2) and 42 U.S.C. § 1988. Thorncreek seeks $1,695,120.43 in fees and nontaxable expenses from the Village of Park Forest and Tom Mick, the defendants against whom it won judgments. Doc. 471. Defendants, including Mick and the Village, seek $1,070,134.82 in fees and nontaxable expenses from Thorncreek. Doc. 470. For the following reasons, Defendants' motion is denied outright, and Thorncreek's motion is granted in part, with Thorncreek being awarded $430,999.25 in fees and $44,844.33 in nontaxable expenses.

## I.     Defendants' Motion for Fees and Nontaxable Expenses

The court begins with Defendants' motion. The Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, provides that a district court, "in its discretion, may allow the prevailing party … a reasonable attorney's fee as part of the costs" in suits brought under certain

federal civil rights statutes, including 42 U.S.C. §§ 1983, 1985, and 1986. 42 U.S.C. § 1988(b). The Act is asymmetrical; prevailing plaintiffs are entitled to fees except "under special circumstances," *City of Riverside v. Rivera*, 477 U.S. 561, 580 (1986) (plurality opinion), but prevailing defendants may recover fees "only if … the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Hughes v. Rowe*, 449 U.S. 5, 14 (1980) (per curiam) (internal quotation marks omitted) (quoting *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978)); *see also James v. City of Boise*, 136 S. Ct. 685, 686 (2016) (per curiam) (reaffirming *Hughes*). "The fact that a plaintiff may ultimately lose his case is not in itself a sufficient justification for the assessment of fees"; indeed, even the fact that the plaintiff's allegations turned out to be "legally insufficient to require a trial" is not reason enough to award fees to the defendant. *Hughes*, 449 U.S. at 14, 16; *see also Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 n.5 (1993) ("[A] court must resist the understandable temptation to engage in *post hoc* reasoning by concluding that an ultimately unsuccessful action must have been unreasonable or without foundation.") (internal quotation marks omitted); *LaSalle Nat'l Bank of Chi. v. Cnty. of DuPage*, 10 F.3d 1333, 1335, 1340 (7th Cir. 1993) (affirming the denial of the defendant's motion for fees after the district court had dismissed all claims on motions to dismiss and for summary judgment). If only some of a plaintiff's claims are frivolous, the defendant should recover fees, "but only for costs that the defendant would not have incurred but for the frivolous claims." *Fox v. Vice*, 563 U.S. 826, 829 (2011).

Although almost all of Thorncreek's claims failed and many failed as a matter of law, none were frivolous. The operative complaint listed claims under 42 U.S.C. §§ 1983, 1985, and 1986 for: (1) violations of Thorncreek's right to equal protection under the Fourteenth

Amendment of the United States Constitution, Doc. 17 at ¶¶ 127-44; (2) violations of the Fourteenth Amendment's substantive and procedural due process guarantees, *id*. at ¶¶ 145-70; (3) takings of Thorncreek's property without just compensation, in violation of the Fifth Amendment of the United States Constitution (as incorporated by the Fourteenth) and article I, § 15, of the Illinois Constitution, *id*. at ¶¶ 171-83; (4) a conspiracy to deprive Thorncreek of its federal equal protection rights, *id*. at ¶¶ 184-91; (5) failures to prevent the conspiracy, *id*. at ¶¶ 192-99; (6) violations of Thorncreek's right to equal protection under article I, § 2, of the Illinois Constitution, *id*. at ¶¶ 200-03; (7) violations of the due process guarantees of article I, § 2, of the Illinois Constitution, *id*. at ¶¶ 204-07; (8) violations of the Illinois Civil Rights Act of 2003, *id*. at ¶¶ 208-12; and (9) impermissible land use restrictions, *id*. at ¶¶ 213-21.  More specifically, it alleged that Defendants violated the state and federal equal protection clauses both by discriminating against Thorncreek on the basis of its tenants' race and by discriminating against Thorncreek as a class of one due to their alleged animus against Thorncreek's principal, David Clapper.  Doc. 17.  The complaint named all of the individual defendants in their official capacities and all of the individual defendants except McGann in their individual capacities; it purported to state every claim against all eleven named Defendants.  *Ibid*.

On summary judgment, the court dismissed the due process and takings claims as unripe, reasoning that because Thorncreek had not sought relief for the alleged deprivations in state court, it could not yet be determined whether Defendants had taken Thorncreek's property "without just compensation" or "without due process of law."  970 F. Supp. 2d 828, 845-46; *see Williamson Cnty. Regional Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 196-97 (1985) (holding that, because the plaintiff pursuing a takings claim had not shown that a state law procedure for seeking compensation was "unavailable or inadequate," the takings claim

was "premature"); *Forseth v. Vill. of Sussex*, 199 F.3d 363, 369 (7th Cir. 2000) (applying *Williamson County*'s ripeness doctrine to a substantive due process claim); *River Park, Inc. v. City of Highland Park*, 23 F.3d 164, 167 (7th Cir. 1994) (applying *Williamson County*'s ripeness doctrine to a procedural due process claim).  In defending those claims, Thorncreek argued that it *had* to bring them here before it could seek relief in state court because Rule 13(a) made them compulsory counterclaims in this suit.  970 F. Supp. 2d at 847-48.  That was incorrect.  As the court explained, Rule 13(a) was promulgated under the authority of the Rules Enabling Act, which provides that federal rules "shall not … modify any substantive right."  28 U.S.C. § 2072(b).  If Rule 13(a) allowed plaintiffs to bring otherwise premature takings and due process claims, it would have the impermissible effect of modifying substantive rights.  Still, the argument was not frivolous.  It failed for a relatively subtle reason; after all, Rule 13 on its face could be read to require Thorncreek to bring the takings and due process claims in this suit.  *See LaSalle Nat'l Bank*, 10 F.3d at 1340 (affirming the denial of the defendant's motion for fees where the district court had dismissed takings claims as unripe).  Thus, Defendants are not entitled to fees for work they performed defending against the unripe claims.

Defendants also argue that Thorncreek's claims against the six Village Trustees and John Ostenburg, the Village President, were frivolous.  They point to the fact that Thorncreek did not call a single Trustee to testify during its case in chief.  Doc. 470 at 9.  They contend that Thorncreek named the Trustees out of malice, and they make sure to mention that one of the Trustees, Kenneth Kramer, is 87 years old.  *Id*. at 10.  But it was not unreasonable for Thorncreek to pursue claims against Ostenburg or the Trustees, because Thorncreek had evidence that they were complicit in the Village's alleged harassment of Thorncreek.  Mick,

whom the jury found liable on a class-of-one equal protection claim, told the Trustees in a 2008 email that Thorncreek was trying to sell its Area H complex. He wrote:

> It is my hope that they are successful in their endeavor. Perhaps the Village's collective efforts (Troubled Building and Property Task Force, citing them, pursuing action in local court, denying their Business Office relocation into the G-Courts, cutting off change of occupancy inspections in the G-Courts due to no updating of electrical service to 100 AMP service, etc.) are beginning to have the desired effect we were seeking. That is, we hope to find as many ways as possible to help them see that their business practices are neither appreciated by the Village and the residents as a whole nor are we willing to stand idly by and let them continue to be a drain on our community.

Doc. 151-6 at 3-4. Thus, in the email, Mick recounts to Ostenburg and the Trustees their "collective efforts" against Thorncreek, and he repeatedly expresses his belief that he is acting on their behalf—forcing Thorncreek to sell is "the desired effect we were seeking"; "we hope to find as many ways as possible" to harass Thorncreek; Thorncreek's practices "are not appreciated by the Village and the residents as a whole." Thorncreek's case certainly would have been stronger if Mick had sent a dozen emails like the one he sent in 2008, but the claims against Ostenburg and the Trustees, while reasonably rejected by the jury, were not frivolous.

Defendants also argue that Thorncreek's equal protection claims were frivolous to the extent that they alleged race discrimination rather than class-of-one discrimination. Doc. 470 at 10. They first point out that the Village Trustees themselves were "racially diverse." *Ibid*. The argument seems to be that African-American Trustees could not have discriminated against Thorncreek's African-American tenants on the basis of their race. Defendants adduce no evidence, though, that officials do not or could not discriminate against persons of the same race, and certainly no evidence that it would have been unreasonable for Thorncreek to believe that was happening in this case. *See Castaneda v. Partida*, 430 U.S. 482, 499 (1977) ("[I]t would be unwise to presume as a matter of law that human beings of one definable group will not discriminate against other members of their group."); *United States v. Rutledge*, 648 F.3d 555,

561 (7th Cir. 2011) ("The Supreme Court has rejected any 'conclusive presumption' that a member of a group will not discriminate against other members of a group.").

In fact, although the jury reasonably found it insufficient, Thorncreek had some evidence that the Village was discriminating against it because of its tenants' racial makeup. In 2005, when the Village began to focus on Thorncreek, 90 to 95 percent of Thorncreek's residents were African-American. 970 F. Supp. 2d at 834. Kerestes, the Village's Building Commissioner, testified in a deposition that the Village was concerned that Thorncreek's racial makeup was "highly skewed" and that there were "too many blacks living in Thorncreek Apartments as opposed to the rest of the community," and that the Village preferred that there be "fewer black people" at Thorncreek. *Ibid.*; Doc. 150-7 at 39-40. Mick's assistant wrote a memorandum to Mick stating that Village "[s]taff met with management … from Thorn Creek Townhouses to offer suggestions … that will enable them to attract a more diverse resident base." 970 F. Supp. 2d at 835; Doc. 157-1 at 31. And at a 2006 meeting, Kerestes stated that Thorncreek's operations had changed the racial makeup from "58% white, 39% black" to "90% black and 10% white." 970 F. Supp. 2d at 836; Doc. 157-1 at 72. Given this evidence, Thorncreek's race discrimination claims were not frivolous.

Thorncreek's decision to pursue class-of-one equal protection claims may have played a part in defeating its race discrimination claims. The two theories were in tension, as the court warned in its summary judgment opinion, 970 F. Supp. 2d at 843; the fact that the Village and its official were motivated by *personal* animus towards Clapper could have made the jury less likely to find that the Village was motivated by *racial* animus towards Thorncreek's tenants. But the fact that Thorncreek arguably made a strategic mistake by deciding to pursue both theories at

trial does not justify awarding Defendants fees; in any event, Defendants do not argue as much. Defendants' motion for fees accordingly is denied.

## II.     Thorncreek's Motion for Fees and Nontaxable Expenses

Thorncreek's motion is more complicated to resolve.  As discussed, unlike prevailing defendants, prevailing plaintiffs in civil rights cases are presumptively entitled to a "reasonable fee."  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also Johnson v. Daley*, 339 F.3d 582, 587 (7th Cir. 2003) (en banc) ("Section 1988 has been treated as asymmetric—that is, prevailing plaintiffs recover their legal expenses but prevailing defendants do not."); *Payne v. Milwaukee Cnty.*, 288 F.3d 1021, 1026 (7th Cir. 2002) (describing the "asymmetry" in § 1988 "between prevailing plaintiffs and prevailing defendants").  The first step in determining a reasonable fee is to calculate the "lodestar," which is the "number of hours reasonably expended on the litigation [multiplied] by a reasonable hourly rate."  *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 639 (7th Cir. 2011) (quoting *Hensley*, 461 U.S. at 433).  The court then adjusts the lodestar to account for other considerations, including, most importantly, the "results obtained." *Hensley*, 461 U.S. at 434; *see also Montanez v. Simon*, 755 F.3d 547, 556 (7th Cir. 2014) (affirming a district court's decision to slash the lodestar by 50 percent to account for the plaintiff's "limited success").

Defendants concede that each Thorncreek entity—including those awarded only nominal damages—is a prevailing party.  Doc. 476 at 6.  So the court proceeds to the lodestar calculation—first by addressing disputes about the number of hours reasonably spent on the litigation, and then, because Defendants do not dispute Thorncreek's proposed hourly rates, Doc. 471-1 at ¶ 1, by addressing proposed departures from the lodestar.

A.    **Calculating the Lodestar**

Thorncreek asserts that its lawyers spent 4,327.94 hours on its case.  Doc. 471 at 14.

Defendants argue that many of those hours were not reasonably expended on the litigation.

Defendants first object to Thorncreek's request to be reimbursed for 24.2 hours of work

performed by Jenner and Block, a law firm that briefly served as Thorncreek's local counsel.

Doc. 476 at 12-13.  The problem, Defendants contend, is that Jenner worked on *two* matters for

Thorncreek—both this suit and *Scott v. Thorncreek Apartments II, LLC*, 2008 C 868 (N.D. Ill.), a

putative class action brought against Thorncreek II by some of its residents—and Thorncreek's

bill includes Jenner's work on both suits.  Thorncreek responds that it seeks recovery only for

work that Jenner's invoices clearly attribute to this suit.  Doc. 482 at 18.  But the court counts

only 6.95 hours of clearly related work—that is, work memorialized by time entries identifying

this suit by name, referring to Judge Norgle (to whom this suit was initially assigned), or

indicating in some other obvious way that it relates to this suit, while dividing by two any entry

dealing with both the *Scott* case and specifically with this suit.  Doc. 471-15.  Those entries are:

- "Review Complaint and attachments (Village of Park Forest)": **1 hour**
  (*id*. at 3);

- "Reviewed Notice of Removal and followed-up with co-counsel, L.
  James, regarding same (Village of Park Forest)": **.8 hours** (*ibid*.);

- "Prepared Notice of Removal and accompanying documents to be
  filed (Village of Park Forest)": **.2 hours** (*ibid*.);

- "Finalized Notice of Removal and accompanying documents and
  prepared same to be filed (Village of Park Forest)": **1 hour** (*ibid*.);

- "Reviewed and revised draft Answers to Complaints in the Scott v.
  Thorncreek and Village of Park Forest v. Thorncreek cases, and
  prepared same for filing": **1.25 hours** after dividing by 2 (*id*. at 4);

- "Reviewed time to respond to plaintiff's motion to remand and
  prepared e-mail to L. Scruggs regarding same (Scott v. Thorncreek);
  discussed status of case with E. Ward; prepared e-mail to L. Scruggs

9

and E. Ward regarding plaintiff's motion to remand (Village v. Thorncreek) and other court filings": **.25 hours** after dividing by 2 (*id.* at 7);

- "Reviewed Judge Norgle's order recommending transfer of Village v. Thorncreek case to Magistrate; prepared e-mail to L. Scruggs providing same; discussed status with L. Scruggs": **.5 hours** (*ibid.*);

- "Prepared for and attended hearing on plaintiff's motion to remand (Scott v. Thorncreek) and followed-up with L. Scruggs regarding same; reviewed Thorncreek's response to plaintiff's motion to remand (Village v. Thorncreek) and prepared e-mail to L. Scruggs regarding same": **.75 hours** after dividing by 2 (*ibid.*);

- "Reviewed court's minute order granting third party defendant's motion to stay and allowing for briefing schedule on plaintiff's motion to remand (Village v. Thorncreek); prepared e-mail to L. Scruggs regarding same; attended conference with L. Scruggs regarding status of case and handling moving forward": **.5 hours** (*id.* at 7-8);

- "Reviewed motion for leave to file sur-reply filed by defendants": **.2 hours** (*id.* at 8); and

- "Telephone conference with M. Cassidy regarding Judge Norgle; sent RFA": **.5 hours** (*id.* at 10).

Because "the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended," Thorncreek can recover fees for only 6.95 hours of Jenner's time. *Hensley*, 461 U.S. at 437.

Defendants also object to 14.49 hours of work performed by Dirk Van Beek, an attorney who replaced Jenner as Thorncreek's local counsel. Doc. 476 at 13; Doc. 482 at 19. They contend that some of Van Beek's time entries relate to non-compensable clerical work. *See Spegon v. Catholic Bishop of Chi.*, 175 F.3d 544, 553 (7th Cir. 1999) ("[T]he court should disallow not only hours spent on tasks that would normally not be billed to a paying client, but also those hours expended by counsel on tasks that are easily delegable to non-professional assistance.") (internal quotation marks omitted). That is correct. The court disallows two entries that appear to be for clerical work: one hour on July 1, 2009 for "Fil[ing] three Appearances,"

and one hour on July 17, 2009 for "Fil[ing] Appearance; review[ing] court docket; letter to opposing counsel with Appearance." Doc. 471-15 at 13. Thorncreek can recover for only 12.49 hours of Van Beek's time.

Defendants next argue that, because Thorncreek's summary judgment motion was denied summarily for noncompliance with Local Rule 56.1, 970 F. Supp. 2d at 838-39; *see generally Mervyn v. Nelson Westerberg*, 142 F. Supp. 3d 663 (N.D. Ill. 2015) (addressing in greater detail the same kind of noncompliance), the 195.25 hours of work that it spent on the motion were unreasonable. Doc. 476 at 14-15; Doc. 476-1. (Defendants say that they have identified 196.25 hours of work for $65,108.75; their itemized list contains only 195.25 hours of work, but the $65,108.75 figure is correct. Doc. 476-1.) Thorncreek responds that the listed hours account not just for time that its lawyers spent preparing its own summary judgment motion, but also for time spent responding to Defendants' summary judgment motion. Doc. 482 at 19-20. But the invoices of Thorncreek's lawyers undermine that position. Forty-seven of the sixty time entries are for work performed on or before August 22, 2011, the date on which Defendants filed their summary judgment motion, and so could not have been for work performed in opposition to Defendants' motion. Doc. 476-1 at 2-7. And the other thirteen time entries' descriptions all show that they relate to work done on Thorncreek's reply brief in support of its own motion. *Id*. at 7-8.

Thorncreek also contends that it should be compensated for working on its own summary judgment motion because, while the court denied the motion for violating Local Rule 56.1, it also "indicated the Motion would have been denied under any circumstance." Doc. 471 at 16; *see* 970 F. Supp. 2d at 839 ("The motion would have been denied even if Thorncreek had complied with Local Rule 56.1, as the record viewed in the light most favorable to the Village

would not permit the entry of summary judgment in Thorncreek's favor on any of its claims."). It is hard to understand that argument. Why would it be unreasonable to spend 195.25 hours working on an otherwise meritorious motion that fails only because of a local rules violation, but not to spend 195.25 hours working on a motion that fails *both* on the merits *and* because of a local rules violation? That a technically improper motion also fails on the merits is one more reason not to have wasted time preparing it. *See Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399, 410 (7th Cir. 1999) (affirming the district court's denial of fees under the Fair Labor Standards Act, 29 U.S.C. § 216(b), for work performed on untimely motions).

Thorncreek next argues that work on its summary judgment motion contributed to its success at trial and therefore is partially compensable. That argument rests on a sound legal premise. Even if a motion itself is unreasonable, the spend time *working* on it may be compensable if the work later contributes to the party's victory. *Cf. Flanagan v. Office of the Chief Judge of the Circuit Court of Cook Cnty.*, 663 F. Supp. 2d 662, 670 (N.D. Ill. 2009) ("Plaintiff's work on the unsuccessful discrimination claims did contribute to the success of the retaliation claim. That work is therefore at least partially compensable."). But Thorncreek's summary judgment motion dealt mostly with claims that Thorncreek ultimately lost—its due process, takings, and state law claims, and its claims under 42 U.S.C. §§ 1985 and 1986. Doc. 144. The motion did deal briefly with Thorncreek's class-of-one equal protection claims, which Thorncreek ultimately won, *id*. at 29-30, but Thorncreek had to defend its class-of-one claims in response to Defendants' summary judgment motion, which made redundant any work Thorncreek performed marshaling evidence of class-of-one discrimination for its own motion. Doc. 156 at 15-27; Doc. 160 at 17-27.

The court therefore does not credit Thorncreek for any work on its summary judgment motion. Thorncreek would have received partial credit had it shown that its summary judgment motion involved any work that it did not otherwise have to perform and that later contributed to its victory; but, as just explained, Thorncreek has not shown this. The analysis could stop there, but the court adds for good measure that plaintiffs in discrimination suits can almost never present strong enough evidence to win outright on summary judgment; Thorncreek's motion in particular was a fool's errand, and it behaved unreasonably by spending time litigating it. *Cf. Shager v. Upjohn Co.*, 913 F.2d 398, 403 (7th Cir. 1990) (describing as "the rare case" the situation in which "it is the plaintiff's motion for summary judgment that was granted").

Defendants' last objection to Thorncreek's proposed tally of hours is that it contains the same Andrew Mychalowych 7.25-hour entry twice. Doc. 476 at 15. Thorncreek concedes the mistake, Doc. 482 at 7 n.1, and so Mychalowych's credited hours are reduced by 7.25.

So, because Thorncreek originally requested compensation for 4,327.94 hours of attorney work, and because the court has determined that 221.75 of those hours should not be credited (counting the 17.25-hour reduction for Jenner and Block, the two-hour reduction for Van Beek, the 7.25-hour reduction for Mychalowych's duplicative time entry, and the 195.25-hour reduction for work on Thorncreek's summary judgment motion), the court finds that Thorncreek reasonably expended 4106.19 hours on its suit against Defendants. Thorncreek proposes different hourly rates for different lawyers, and Defendants do not dispute that the rates are reasonable. Doc. 471-1 at ¶ 1. Thorncreek initially asked for $9,265 for 24.2 hours of work by Jenner, but the court reduces that portion of the lodestar by $6,132.25, to $3,132.75. Thorncreek also initially asked for $65,108.75 for 195.25 hours of work on its summary judgment motion, but the court disallows that portion of the lodestar entirely. Thorncreek requests $250 an hour

for Van Beek's work, Doc. 471 at 14, and so his two-hour reduction reduces the lodestar by $500. And because Mychalowych's hourly fee was $375, his 7.25-hour reduction for the duplicative entry reduces the lodestar by $2,718.75. So, Thorncreek proposes a lodestar of $1,367,457.50, but the actual lodestar is $1,292,997.75 ($1,367,457.50 – $6,132.25 – $65,108.75 – $500.00 – $2,718.75).

### B.      Departures from the Lodestar

Next, the court must decide by how much, if at all, Thorncreek's fee award should depart from the lodestar. "[T]here is a 'strong presumption' that the lodestar figure is reasonable, but that presumption may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553-54 (2010); *see also Robinson v. City of Harvey*, 489 F.3d 864, 872 (7th Cir. 2007) ("An award of the originally calculated lodestar amount is presumptively reasonable, and it is the City's burden to convince us that a lower rate is *required*.") (citation omitted). Although several factors affect whether a court should depart from the lodestar, *see Winn*, 559 U.S. at 551, the most important of them— and the only factor at issue here—is the extent of the prevailing party's success. *See Farrar v. Hobby*, 506 U.S. 103, 114 (1992) ("'[T]he most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'") (quoting *Hensley*, 461 U.S. at 436). Sometimes a plaintiff's limited success is enough to swamp his fee request entirely; "[a] plaintiff who seeks compensatory damages but receives no more than nominal damages," for instance, often "should receive no attorney's fees at all." *Id*. at 114-15; *see also Montanez*, 755 F.3d at 556-57 ("We don't mean to suggest that Montanez's victory was purely nominal, in which case he would not be entitled to attorney's fees at all."); *Maul v. Constan*, 23 F.3d 143, 147 (7th Cir.

14

1994) (holding that the district court abused its discretion by awarding fees where the plaintiff, who sought $100,000 in compensatory damages, received $1); *Cartwright v. Stamper*, 7 F.3d 106, 110 (7th Cir. 1993) (holding that the district court abused its discretion by awarding fees where the plaintiff, who sought compensatory damages, received $1); *Willis v. City of Chicago*, 999 F.2d 284, 290 (7th Cir. 1993) (holding that the district court abused its discretion by awarding fees where the plaintiff, who sought more than $1 million in compensatory and punitive damages, received $1).

Defendants argue that the court should substantially reduce Thorncreek's fee award because of its low degree of success, and the court agrees. Two of the three Thorncreek entities—Thorncreek I and Thorncreek III—received $1 each in nominal damages from the jury, even though in closing arguments they asked for $2.5 million and $10 million in compensatory damages, respectively. Doc. 405-6 at 27. That makes them prevailing parties for the purpose of § 1988, as Defendants concede. Doc. 476 at 6; *see Farrar*, 506 U.S. at 112 ("[A] plaintiff who wins nominal damages is a prevailing party under § 1988."); *Johnson*, 339 F.3d at 587 ("A plaintiff achieves 'prevailing party' status by recovering *any* judgment, even for nominal damages."). As noted, however, the only reasonable fee for a plaintiff who seeks a substantial damages award and receives only nominal damages is typically no fee at all. *See Farrar*, 506 U.S. at 115-16 (denying fees in light of the plaintiff's nominal victory); *Maul*, 23 F.3d at 147 (same); *Cartwright*, 7 F.3d at 110 (same); *Willis*, 999 F.2d at 290 (same).

Still, it is not *always* inappropriate to award fees to a plaintiff who wins only nominal damages. "Nominal relief does not necessarily a nominal victory make"; if "other factors establish that the victory, although monetarily small, is actually a significant one," then a district court may still award fees. *Johnson*, 339 F.3d at 609 (quoting *Farrar*, 506 U.S. at 121

(O'Connor, J., concurring)). The Seventh Circuit considers three factors, sometimes called the "*Farrar* factors," to determine whether a small damages award is nonetheless significant enough to warrant the award of attorney fees under § 1988: "(1) the difference between the judgment recovered and the recovery sought; (2) the significance of the legal issue on which the plaintiff prevailed; and (3) the public purpose of the litigation." *Ibid*.

The *Farrar* factors do not assist Thorncreek I and Thorncreek III. The first factor militates strongly against awarding fees to them. The second factor, the significance of the legal issue on which Thorncreek I and III prevailed, also weighs against fees. Thorncreek prevailed only on the theory that Mick and the Village deprived it of equal protection by discriminating against it as a class of one. That was not a significant legal issue, at least relative to Thorncreek's race discrimination and civil rights claims. *Cf. Karraker v. Rent-A-Center, Inc.*, 492 F.3d 896, 899 (7th Cir. 2007) (concluding that the plaintiff *did* prevail on a significant issue in light of the fact that the injunction the plaintiff won benefitted 108 people).

The third factor, "the public purpose of the litigation," does not point strongly one way or the other. On the one hand, the jury awarded punitive damages, which "is strong evidence that the victory served a public purpose." *Cartwright*, 7 F.3d at 110. But the amount of the punitive award, $5,000 total, is too low to have a significant deterrent effect. And in the end, Thorncreek was able to vindicate only a personal right. No one besides Thorncreek directly benefits from remedying class-of-one discrimination against Thorncreek. Others may benefit from plaintiff victories in class-of-one suits in the indirect sense that punishing one violator deters others, but the same is true of plaintiff victories in every constitutional suit, and indeed in every *tort* suit— punishing one battery should help deter other batteries, but it would be obtuse to say that a suit for battery has a public purpose in the sense in which the *Farrar* factors use the term. *See Maul*,

23 F.3d at 146 ("[S]ince Section 1983 claims necessarily involve the violation of a right, privilege or immunity, attorney's fees are appropriate after *Farrar* only when the plaintiff's victory entails something more than merely a determination that a constitutional guarantee was infringed.").

Citing *City of Riverside v. Rivera*, 477 U.S. 561 (1986), Thorncreek insists that constitutional suits inherently have public benefits. Doc. 471 at 12-13. That misunderstands *Rivera*. *Rivera* holds that fee awards can exceed damages awards in suits under § 1983, explaining that "[a] rule of proportionality would make it difficult, if not impossible, for individuals with meritorious civil rights claims but relatively small potential damages to obtain redress from the courts." *Id*. at 578. Other precedents have clarified that courts must not limit fee awards to a fixed multiple of damages awards. *See Montanez*, 755 F.3d at 557 (calling "the mistake of limiting the fee to some multiple of the judgment" a "reversible error"); *Anderson v. AB Painting & Sandblasting Inc.*, 578 F.3d 542, 545 (7th Cir. 2009). But *Rivera* does not hold that plaintiffs should receive fee awards when they seek millions in compensatory damages and receive only nominal damages instead. "The public purpose prong of *Farrar* is, in other words, not satisfied simply because plaintiff successfully establishes that his constitutional rights have been violated. Something more is needed." *Maul*, 23 F.3d at 146.

Thorncreek I and III received almost none of what they asked for. Thorncreek II asked for $8 million, Doc. 405-6 at 27, and received a bit over $2 million. Given its overall success, or lack thereof—two of the three entities received nominal damages, and overall it received less than ten percent ($2.015 million) of the compensatory damages ($20.5 million) it requested— Thorncreek's fee award will be one third of the lodestar. Defendants argue that the award should be even lower—one sixth of the lodestar. Thorncreek, meanwhile, argues that "all of the

identical fees and costs would have been incurred regardless of whether Thorncreek II was the only plaintiff," and therefore that the court should not depart from the lodestar at all. Doc. 482 at 15.

Both arguments have force, but they largely cancel out. It is true that the work performed for each Thorncreek entity materially overlapped, though there also were material differences between the liability and damages evidence. *See Hensley*, 461 U.S. at 435, 448 (noting that where two claims share a "common core of facts" or where "the actual work performed by lawyers to develop the facts of both claims [are] closely intertwined," a court should not reduce the plaintiff's fee award if one of the claims is unsuccessful); *Fine v. Ryan Int'l Airlines*, 305 F.3d 746 (7th Cir. 2002) ("Where several claims are presented and the plaintiff prevails on less than all, the court must decide how related the claims were to one another."). Still, the Thorncreek entities as a whole, and even Thorncreek II, received far less in damages than they set out to get, and so it would be a mistake to award them the full lodestar or anywhere close to that amount. *See Montanez*, 755 F.3d at 556-57 (affirming a 50 percent degree-of-success reduction in a suit in which the plaintiff received only $2,000 in punitive and compensatory damages). But it would be a mistake to make the ratio between the fee award and the lodestar amount identical to the ratio between the damages award and damages request; juries often award some amount lower than the plaintiff's request, and if that were enough to justify a reduction of the lodestar, there would not be a "'strong presumption' that the lodestar figure is reasonable." *Winn*, 559 U.S. at 553-54. A two-thirds reduction appropriately reflects Thorncreek's underwhelming results. *See Montanez*, 755 F.3d at 557 (when "the judge cannot easily separate the successful and unsuccessful work, there is nothing to do but make an across-the-board reduction that seems appropriate in light of the ratio between winning and losing

claims"). Thus, Thorncreek's fee award under § 1988 will be $430,999.25—one third of the lodestar calculated above.

### C. Thorncreek's Request for Nontaxable Expenses

Although § 1988(b) "provides only that 'the court, in its discretion, may allow the prevailing party … a reasonable attorney's fee as part of the costs,' the case law overwhelmingly supports the proposition that 'attorney's fee' includes out-of-pocket expenses in preparation for trial." *Henry v. Webermeier*, 738 F.2d 188, 192 (7th Cir. 1984). "[E]xpenses of litigation that are distinct from either statutory costs [under 28 U.S.C. § 1920] or the costs of the lawyer's time reflected in hourly billing rates … are part of the reasonable attorney's fee allowed by" § 1988. *Downes v. Volkswagen of Am., Inc.*, 41 F.3d 1132, 1144 (7th Cir. 1994) (internal quotation marks omitted). Thorncreek requests $327,692.93 in nontaxable expenses, consisting of: (1) $131,004.03 for electronic discovery; (2) $20,884.28 for trial travel; (3) $27,717.99 for pretrial travel; (4) $141,469.21 for expert witnesses; (5) $4,808.44 for legal research; and (6) $1,808.98 for "Postage/UPS/Courier." Doc. 471 at 18. (Thorncreek asserts that the requested expenses add up to $327,662.93, *ibid.*, but that is $30 low.)

Defendants object to the first request on the ground that Thorncreek already asked to be reimbursed for e-discovery, in its bill of costs, and the court denied the request. Doc. 476 at 16; *see* 123 F. Supp. 3d at 1016. But that ruling addressed the question whether to award Thorncreek its e-discovery expenses as *costs* under 28 U.S.C. § 1920 and Rule 54(d). The question here is whether to award Thorncreek its e-discovery expenses as a part of *attorney fees* under 42 U.S.C. § 1988. Those are different questions. Section 1920 treats prevailing plaintiffs and prevailing defendants the same. *Compare Little v. Mitsubishi Motors N. Am., Inc.*, 514 F.3d 699, 702 (7th Cir. 2008) (per curiam) (affirming an award of costs to a prevailing defendant),

with *Winniczek v. Nagelberg*, 400 F.3d 503, 504-05 (7th Cir. 2005) (per curiam) (awarding costs under § 1920 to a prevailing plaintiff).  As a consequence, in "mixed results" cases, where some claims succeed and others do not, it can be appropriate to deny costs to both sides on the theory that everything roughly washes out.  *See Testa v. Vill. of Mundelein, Ill.*, 89 F.3d 443, 447 (7th Cir. 1996) (affirming an order for each side to bear its own costs in light of "the mixed outcome of the civil rights and malicious prosecution claims"); *Israel Travel Advisory Serv., Inc. v. Israel Identity Tours, Inc.*, 61 F.3d 1250, 1261 (7th Cir. 1995) (affirming an order that each side bear its own costs because the plaintiffs prevailed, "but only in part").  That was why the court held that the parties must bear their own costs in this case.  123 F. Supp. 3d at 1016.  As discussed, though, 42 U.S.C. § 1988 does not treat plaintiffs and defendants equally; courts typically should award fees to plaintiffs who win even marginal (though not too marginal) victories, *see Rivera*, 477 U.S. at 574, but they should avoid awarding fees to defendants unless the claims against them were bogus, *see Hughes*, 449 U.S. at 15-16.  The fact that the parties' entitlements to costs under § 1920 wash out therefore does not necessarily entail that their entitlements to fees and costs as part of fees under § 1988 wash out, too.

Defendants also incorporate, by reference to their brief opposing Thorncreek's bill of costs, their objections to being billed for e-discovery expenses.  Doc. 476 at 16 (citing Doc. 395 at 10-15).  The problem is that those objections turned on the definition of "costs" in 28 U.S.C. § 1920, not the award of nontaxable expenses under 42 U.S.C. § 1988.  Defendants argued that the vast majority of work performed during e-discovery was neither "making copies" nor "exemplification," and therefore that e-discovery did not fit into any category that § 1920 makes taxable.  Doc. 395 at 11; *see Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 674 F.3d 158, 169 (3d Cir. 2012) ("The decisions that allow taxation of all, or essentially all, electronic

discovery consultant charges, such as the District Court's ruling in this case, are untethered from [§ 1920's] statutory mooring."); *Hecker v. Deere & Co.*, 556 F.3d 575, 591 (7th Cir. 2009) ("Fidelity responds that the costs were for converting computer data into a readable format in response to plaintiffs' discovery requests; such costs are recoverable under 28 U.S.C. § 1920."); *see also United States ex rel. Marshall v. Woodward Governor Co.*, 2016 WL 2755324, at *1-3 (N.D. Ill. May 12, 2016) (discussing the extent to which e-discovery expenses are compensable under § 1920).

But Thorncreek is no longer arguing that its e-discovery expenses are taxable costs under 28 U.S.C. § 1920; it now argues that they are nontaxable expenses compensable under 42 U.S.C. § 1988. As noted, "expenses of litigation that are distinct from … statutory costs [under § 1920] … are part of the reasonable attorney's fee allowed by" § 1988. *Downes*, 41 F.3d at 1144. Payments to e-discovery vendors are "expenses of litigation," a fact that many courts have recognized in allowing prevailing civil rights plaintiffs to recover e-discovery expenses under § 1988 and similar statutes. *See Romag Fasteners, Inc. v. Fossil, Inc.*, 2015 WL 5787019, at *7 (D. Conn. Sept. 30, 2015); *Wolfe v. Va. Dep't of Transp.*, 2015 WL 858875, at *1, 5 (W.D. Va. Feb. 27, 2015); *United States ex rel. Becker v. Tools & Metals, Inc.*, 2013 WL 1293818, at *10-11 (N.D. Tex. Mar. 31, 2013); *D.G. ex rel. Strickland v. Yarbrough*, 2013 WL 1343151, at *7-9 (N.D. Okla. Mar. 31, 2013). Defendants' objection is overruled, and the requested expenses for e-discovery are allowed.

Thorncreek next requests $20,884.28 request for trial travel expenses. Ten invoices from the Dana Hotel account for $12,658.94 of the request. Doc. 476 at 17. Defendants object that Thorncreek has not explained "why it was necessary to stay at the Dana Hotel," "why multiple rooms were reserved under the name of lead counsel, Andrew Mychalowych," or "why

Defendants should reimburse hotel expenses incurred by [Thorncreek's] corporate representative, David Clapper." *Ibid.* Thorncreek responds to none of these objections; its reply brief simply states:

> Having subtracted all charges on the Dana Hotel invoice related to any food/mini bar charges and subtracting the hotel charges related to the experts Clay Travis and Lane Kendig, based on the objections submitted pre-motion by the Defendants, the trial travel expenses incurred by the Thorncreek Parties with regard to the Dana Hotel in the amount of $12,658.94 should be awarded in its entirety.

Doc. 482 at 20-21. Thorncreek's reiterating the amount that it seeks is not an argument that it actually is owed that amount; it accordingly has forfeited any argument in response to the objection. *See Stollings v. Ryobi Techs., Inc.*, 2015 WL 4100479, at *1 (N.D. Ill. July 6, 2015) ("By admitting, either affirmatively or by failing to argue the point, that these costs are not recoverable, Stollings has forfeited any claim he might otherwise have had to their recovery."); *Lawyer v. 84 Lumber Co.*, 1998 WL 111703, at *6 (N.D. Ill. Mar. 12, 1998) ("In response to defendant's objections, however, plaintiff provides no explanation of the expenses other than to conclusorily assert that the expenses were necessarily incurred for the litigation. Plaintiff has failed to meet his burden of showing that the costs were necessarily incurred in the litigation."). Thus, the court disallows all charges for Clapper's room and for all of Mychalowych's rooms except for one. Thorncreek's request for expenses related to its stay at the Dana Hotel is reduced by $9,186.03, to $3,472.91.

Defendants object to the remaining $8,225.34 in charges for trial travel, and to Thorncreek's entire $27,717.99 request for *pretrial* travel expenses, on the ground that Thorncreek's billing summary describes them using vague terms like "Flight Fee," "Travel Fee," and "Misc. Travel Charges During Chicago Trial," making it impossible to determine whether the expenses were reasonable. Doc. 476 at 17. Thorncreek responds that the charges listed for

flights were reasonable market prices. Doc. 482 at 21. But that misses the point. The question is not whether the flights were priced reasonably; it is whether they were necessary at all. And the other entries, such as "Travel Fee," "Misc. Travel Charges," and "Parking," are even more opaque. The court disallows the entire $8,225.34 for trial travel. *Cf. Se-Kure Controls, Inc. v. Vanguard Prods. Grp., Inc.*, 873 F. Supp. 2d 939, 947-49 (N.D. Ill. 2012) (refusing to award costs for copies when the documentary evidence did not make clear "whether Defendants s[ought] reimbursement for copies that were necessarily incurred for the litigation or made solely for the convenience of counsel," and explaining that when a litigant asks for a category of costs but fails to justify the amount requested, the court may either reduce the request by a percentage or deny the request altogether). Thorncreek's award for trial travel expenses is reduced from $20,884.28 to $3,472.91, and its $27,717.99 request for pretrial travel expenses is disallowed entirely.

Defendants next object to Thorncreek's $141,469.21 request for the fees and costs of its expert witnesses. They contend that expert witness fees are not compensable in suits under § 1983 because § 1988(c) makes expert witness fees compensable only in suits under 42 U.S.C. §§ 1981 or 1981a. Doc. 476 at 19. That is correct. Section 1988(c) provides, in relevant part:

> In awarding an attorney's fee under subsection (b) of this section in any action or proceeding to enforce a provision of section 1981 or 1981a of this title, the court, in its discretion, may include expert fees as part of the attorney's fee.

42 U.S.C. § 1988(c). Subsection (c) was added to § 1988 in 1991. Before then, *no* plaintiffs could recover expert witness fees or expenses under § 1988. *See W. Va. Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 88-92 (1991) (holding that, because the "statutory usage shows beyond question that attorney's fees and expert fees are distinct items of expense," § 1988 did not allow awards of expert fees). Congress overruled *Casey* by enacting § 1988(c), but only for suits brought under §§ 1981 and 1981a; *Casey* remains good law for suits under § 1983. *See Jenkins*

*by Jenkins v. Missouri*, 158 F.3d 980, 983 (8th Cir. 1998) ("Congress amended § 1988 after *Casey* to authorize the award of expert fees in cases brought under [§§ 1981 and 1981a], but that amendment does not affect this section 1983 case."); *Robinson v. City of Harvey*, 2004 WL 2033714, at *8 (N.D. Ill. Aug. 13, 2004) (refusing to award fees for experts in a § 1983 suit); *Woodard v. Chi. Bd. of Educ.*, 2002 WL 31749179, at *3 (N.D. Ill. Dec. 6, 2002) (same); *Newsome v. McCabe*, 2002 WL 1008472, at *9 (N.D. Ill. May 17, 2002) (same); *see also H.D.V.-Greektown, L.L.C. v. City of Detroit*, 2015 WL 1530353, at *13 (E.D. Mich. Mar. 31, 2015) (collecting cases). The objection is sustained.

Defendants next object to Thorncreek's $4,808.44 bill for legal research expenses on the ground that Thorncreek's documentation is too vague to distinguish relevant research from irrelevant research, such as research related to the *Scott* suit discussed above. Doc. 476 at 27-28. That is true. The only document that Thorncreek cites to support its request for legal research expenses is a two-column table listing "Invoice Date[s]" and "Amount[s]." Doc. 471 at 18; Doc. 471-11 at 7. The table does not describe the research conducted, even in general terms. Thorncreek asserts in its reply brief that the list contains no research for the *Scott* matter, but "assertions in briefs are not evidence." *Mitze v. Colvin*, 782 F.3d 879, 882 (7th Cir. 2015); *see also Davis v. Budz*, 2011 WL 1303477, at *8-9 (N.D. Ill. Mar. 31, 2011) (denying a request for reimbursement for research expenses where the prevailing plaintiff offered only "a list of dates on which legal research was purportedly performed and the dates on which WESTLAW billed for the service"). The request is disallowed.

Defendants object to Thorncreek's $1,808.98 bill for postage for the same reason. Doc. 476 at 28-29. Thorncreek's only evidence to support the request is a list of dates and amounts, with no descriptions that would allow Defendants or the court to determine whether the charges

were reasonably incurred.  Doc. 471-11 at 8-9.  That is true, so the request is disallowed.  *See Newsome*, 2002 WL 1008472, at *9 (N.D. Ill. May 17, 2002) ("But we cannot make a reasonableness determination without some explanation of: … (2) what was mailed, faxed or messengered and to whom; … [and] (4) what was researched ….").

Finally, Thorncreek's request for fees to reimburse Jenner includes a $56.04 bill for "disbursements."  *See* Doc. 471-15 at 8.  That could not be more opaque, but Defendants do not object, so any objection is forfeited and the request is granted.

Because nontaxable expenses are part of attorney fees under § 1988, *see Henry*, 738 F.2d at 192, the court will reduce them by two thirds as well.  *See Wells v. City of Chicago*, 925 F. Supp. 2d 1036, 1047-48 (N.D. Ill. 2013) (reducing an expense award under § 1988 by two thirds to account for the plaintiff's limited success).  Accordingly, Thorncreek is awarded $44,844.33 in nontaxable expenses (($131,004.03 + $3,472.91 + $56.04) / 3 ≈ $44,844.33).

## Conclusion

Defendants' motion for fees and nontaxable expenses is denied, while Thorncreek's motion is granted in part and denied in part.  Thorncreek is awarded $430,999.25 for attorneys' fees and $44,844.33 for nontaxable expenses, for a total of $475,843.58.

August 29, 2016

_____
United States District Judge